Hall, Judge.
The facts in this case are but few. The. question is, whether Daniel is bound to pay the util amount which the note given by Lucas to him calió for, oi’ only a moiety oí that sum. 1 think the same principles should govern the case as if it was decides in a court of law ; because the reason why this Court assumes jurisdiction Is, that Daniel, owing to particular circumstances, did not make a defence at. law.
Wneis ike note was given io Daniel, there was no obligation on Lucas to pay it, because it was given on no consideration ; the same remark may be made when it was endorsed by Daniel to McRae. Me ¿foie could not have effected a recovery against Baa'd, because he had given nothing for it; nor was there any liability upon any person, afler the endoroementp for accommodation made by McRae, until it was accepted by the ¡ühusfc, and by them discounted. At ih.u time Lucas ¡.ec-ms absolutely bound yo pay it, ana Jsaüi ifoc/fo,- Daniel became siecursues ;or him. Lucas fo came oornd, because he rs*cciv**u the money h-tnn the Loí.-a, ¿íriim and Dauic! became bound as his securities, beriurw he received it by their means and at their request. 'When McRae juki the debt to the Dank, k© paiu .t ** s t'.o security of Lucas, Had he pfisv-aasad the no:: Í. c:.' £)*.i« ici, for value, and then endorsed .t to t ■ £.• :k . *r value, and had either lie os,* Luca-;, by has couscui, r^nar- *601 wd the money raised «pon it, asid then Lucas had failed, and be had been obliged to pay the money due to the, Sank, there could be no doubt but he could recover the full amount against Daniel. Hiere would be the same result if he had paid for the note to Lucas, by the con» sent of Daniel. "In eitner of Otese cases, he would have had a remedy upon Daniel’s eudornetnertl for fuM indemnity, and this remedy would be authorised by the well known rules of law established in She mercantile world, with regard to bills of exchange and negotiable papers. I admit, that the, form of the note and the endorsements on it, without going further, would lead to the same i*Or medy. Every endorsement is a prima Jade evidence. of a purchase of the note, 3 but the conlrary may be shewn, in the present case, it appears that McRae gave nothing for the. note, and when he endorsed It, he stood in the same situation with Daniel; it never bad belonged to either of them 'when the Bank discounted it, and paid the money to Lucas ; it was in their hands evidence of a debt, boil» against the maker and the endorsers, and they had their remedy accordingly. If either endorser paid it, he bad a remedy against Lucas for the full amount, but against the oilier endorser for a moiely only, and that upon a principle of justice ami equity, that as they both stood in the same situation as co-securities, there could be no reason why one should be compelled to hear a greater burthen than the other; their endorsements were both gratuitous, and on that account when made, a frius or posterius, gave no rule of lia bilify.
It may he further observed, that had not Mediae, or some other person, endorsed the note, Daniel’s liability would have never happened, for the Bank would not receive it without another endorser.
It is said, that in a case similar to the present, the Court, in giving judgment for the. Plaintiff, relied upon the cases of Smith v. Knox — (3 Esp. Rep. 46, and Charles *602 v. Marsden — (1 Taunt. 224.) I allude to the case of Brown v. Mott — (7 Johnson 361.) In both those cases the Plaintiffs, the endorsees, were purchasers of thé hill for valuable consideration; that was not the case here. McRae paid nothing for the note, until he paid the debt due the Bank as security in consequence of his endorse-merit for the accommodation of Lucas.
There can be no doubt but that the transaction may be looked at as it really happened. — 15 East. Rep. 222 — Wright v. Latham 3 Murphey.
Henderson, Judge.
This bill presents the question, »is McRae the co-security of Daniel for Lucas, or supplemental only ? if he is the former, Daniel is entitled to Í relief; if the latter, he is not. Co-securities are those Í who have assumed the same obligation, equal in all their ( liabilities; supplemental securities are those who come } in aid of the former. We are not precluded by the na-"j ture of the endorsement from examining the transaction , as it really is, it affording only prima fade evidence of i/the nature and order of the liabilities of the different ) persons whose names appear upon the' note; to prove \ this, authorities need not be cited. The discussions, which | daily arise in our Courts of Justice upon accommodation { notes and bills, prove sufficiently, that the mercantile order of liability is only prima facie evidence, and, in / fact, may be even inverted, as was declared in 15 East. 216, where a subsequent endorsee was held liable to a prior endorser (not indeed on the bill) it being shewn that it was discounted for his benefit, which fact never could have appeared to the Court, if the note and en-l dorsements were conclusive upon the parties. I am at / a loss to discover how it could ever have been doubted. ). for the admission of such evidence contradicts. no express written agreement, but repels an implication on- ' / ly. The note in the hands of Daniel created no liability in Lucas, for Daniel had given nothing for it. The *603 *¡auie may bo said when it was in the hands of McRae» to whom it was delivered b/ Lucas, the maker, which is evidence that it was made for Lucas’s accommo-daiion, and was not an evidence of a debt from Lucas to Daniel j for if so, why was it left in the hands of Lucas, the maker ? By this fact, McRae was informed that the note was made for Lucas’s accommodation. To enable him to raise money, he put his name there at. Lucas's request, and for Lucas’s benefit. These are the facts of the case-, and from them, we will endeavor to ascertain the nature ami extent of McRae’s engagement. Every endorsement of a note, is drawing a bilí of exchange. It directs the maker of the note to pay its amount to the endorsee, and if the maker gives value for it, it imposes upon Use endorser the obligation of paying* it himself if the maker should not (lo so upon application, and he, the endorser, should be duly notified thereof. It imposes no obligation on the endorsee to apply to a prior endorser before he calls on a subsequent one, but he may do so if he thinks proper j for each endorser may he considered by him as drawing* the bill in his fa-vour, a ml he is substituted to all their rights $ but he is called on to make proof of his endeavours to procuro payment from the maker of the note, or acceptor of the bill of exchange only, and due notice {hereof to such en-dorsee as* Sie may think proper to cal! before the Court. Whether he has applied or given notice to any other endorser, is entirely unimportant in that trial. The iBank, therefore, recovered of McRae, regardless of vhat steps they might Slave taken against Daniel. Their obligation was to use due diligence as regarded Lucas. The obligations of Daniel and McRae were precisely the same, equal in every respect to each other. They are, therefore, co-securities, and the one not supplemental to the other. If is true, that an endorsee for value, when lie indorses the note or bill over, has all his prior endorsers for his indemnity; and had McRae discounted this note, by paying Lucas the money (for it is *604 not necessary tl*at the money should be paid to his en» ^0l's<,r» ** *s sufficient that it is paid to any one at his request) when he afterwards paid the money, and took Up jilc bill from the Bank, he would have been remitted ‘to his former situation, ami might then have looked to , Daniel for an indemnity. Toe money whio;. Mcffae if paid to the Bank, was in satisfaction of his, promise that \ be would pay if Lucas did not, and not as a purchaser ) of the note. That co-securities may be, by different in- \ strunsents executed at different times, and without com- ’ inunicatiou or mutua! understanding to that effect, is / shew n by the case Sir Edward Deering v. the Earl of Wilchelsea — (2 Eos. and Pul. 270 and 14 Vesey.) Craythorn v. Sir John Swinburn. In the latter case, Lord Eldon refused relief, not because the parties were, bound .by different instruments, but because one surety was supplemental to the other. In which case also, it is admitted, that contribution arises, not upon contract, but upon the principle of Equity, that equality is Equity ; that, is, that it was originally so, however it may be at present, since adjudications have been made upon the subject, because men are presumed to act in reference to the law as expounded.
I think these principles ace plainly dcducihlc from the English authorities, although I can find none of them anaSagous to the present case. The case 15 East's Rep. 216 — Brown and others v. Maffey, may on first view seem to be artalagous. But Í think it essentially differs. In that case, a note was given to the payee to raise money to fulfil some obligation or promise which he was under, or then undertook, to the. maker. The note was then delivered to the payee, and by him endorsed to the Plaintiff without consideration, and by the. Plaintiff endorsed at the request and for tiie accommodation of the, payee. The Plaintiff was afterwards compelled to take it up, and he brought an action against the maker. The note, in that case, was in possession of the person to whom it was payable; and this by the consent of the maker. The *605 •pavee was thereby enabled to gain credit, and causo others to incar liabilities for him upon the faith of the note; and this by the consent of the Defendant, vlt-n thereby rave evidence to the world, that the payee had i!« amount in his hands, and that he would pay the saíno to his endorsee. Not so in the present case. For lai-cas, the maker, retained the note, even after Danieles endorsement, which was the most satisfactory evidence that it was made for his accom'-nod-dion, and was not evidence of a real debt due from him to Daniel. All iho circumstances when taken toother, speak the truth. There was no danger of imposition. Besides, it appeals that ihe noto, in the ease above referred ío, was a ml» fot the solo benefit and accommodation of the payee. Another observation might be made on the case. Tho Defendant sticcceiled in his defence on oIIutgirm>ulss and it was a matter of not much moment how be did so. 1 adutif'ihat the case of Brown v. Moll, 7 Johns. 361, is an ñoíli.oi'ity in point against the Complainant. I have exaumicd that case, with respect and retention, which is due to every thing that comes from thai Court, and ido not think that the authorities on which it is professedly bottomed, support it.
Taexor, Chief-Justice, dkseuled.