H. C. SCALES v. WACHOVIA BANK AND TRUST COMPANY, RECEIVER FOR MERCHANTS BANK AND TRUST COMPANY, M. W. NASH, JOHN H. DYER AND WIFE, BERTHA L. DYER, THOMAS MASLIN, METROPOLITAN LIFE INSURANCE COMPANY, WACHOVIA BANK AND TRUST COMPANY.

(Filed 23 June, 1928.)

**1. Pleadings—Demurrer—Misjoinder of Parties and Causes of Action—Fraud.**

Where the complaint against a corporation and others alleges the foreclosure of a mortgage securing a loan by a corporation, bid in at the amount of the loan at a greatly inadequate price, that the corporation continued the loan for its agents in the original amount and the agents sold this equity at a handsome profit, and it generally appears from the plaintiff's allegations that this was done in pursuance of a fixed design of the agents to defraud the plaintiff, with implied notice to the corporation, or that it had sufficient notice to have put it on reasonable inquiry which would have revealed the fraud, and all parties thereto participated in the fraud and received benefits therefrom: *Held,* a demurrer *ore tenus,* made after answers filed, for misjoinder of parties and causes of action is bad.

**2. Same—"Speaking Demurrer."**

A demurrer that depends upon its own material allegations to establish a vital defect in the pleadings objected to, is bad as a "speaking demurrer."

APPEAL by plaintiff from *Stack, J.,* at November Term, 1927, of FORSYTH. Reversed.

The complaint of plaintiff consists of twenty-two pages. The allegations of the complaint are bottomed on two deeds of trust given by plaintiff, a negro man, on or about 19 April, 1923, to the Merchants Bank and Trust Company, trustee (now a defunct banking institution, the defendant Wachovia Bank and Trust Company being the receiver), conveying certain improved real property to secure the payment of $20,000, borrowed from the defendant Metropolitan Life Insurance Company. Two different loans—$12,000 and $8,000. The property is alleged to be worth $50,000. The deeds of trust, it is alleged, were foreclosed and purchased by one of the defendants, M. W. Nash, at the total purchase price of $19,300, the amount due the Insurance Company. New deeds of trust were given by him for about the amount bid at auction sale to the Insurance Company; that the lands were then sold by said Nash, subject to the Insurance Company lien, and the spoils divided between the male defendants, amounting in notes and land estimated at $11,000 over and above the debt to the Life Insurance Company, which was assumed by the purchaser, thus having paid nothing in cash for the property.

It is alleged in detail a fraudulent scheme and conspiracy on the part of all the male defendants connected with the transaction to defraud plaintiff out of his property, and as officers and agents respectively representing the defendant corporations, the corporations had notice and knowledge of the fraud. Minute allegations are made in each step of the alleged fraud and conspiracy and the part played by each defendant, as agents and officers representing the defendant corporations. Actionable fraud is charged against the defendants. It is alleged in detail how each one was active in the transactions "conspired together and formed the deliberate design and purpose to cheat and defraud the plaintiff out of his property." It is alleged that all were parties to the fraud and conspiracy. The corporations had notice through their officers and agents, or with knowledge of the fraud ratified their acts and were benefited by the transaction. The judgment of ejectment suit was alleged to be fraudulent and asked it be declared null and void. The whole tenor of the complaint is to the effect that the defendants Dyer, Maslin and the Merchants Bank and Trust Company, through its officers, Dyer and Maslin, entered into a conspiracy with the defendant Nash to defraud and cheat the plaintiff out of his property, and the complaint specifically alleges that the Metropolitan Life Insurance Company had knowledge, through its duly authorized agents, of these facts at the time of the exchange liens, and complaint further states that as a constituent element of the conspiracy and fraud the judgment was obtained. It is further set out in unequivocal terms the purpose of the conspiracy, and also the benefit received by the Metropolitan Life Insurance Company. It is shown that the Metropolitan Life Insurance Company was in possession of information that would put a reasonably prudent person on notice of the said illegal and unlawful conduct, and that the Metropolitan Life Insurance Company negligently failed to take any step to prevent the perpetration of the fraud, but acquiesced in the undertaking. The complaint then goes on to track part of the funds derived from the perpetration of the alleged fraud.

Every conceivable allegation of conspiracy, fraud and notice are alleged in which all were *particeps criminis,* and the corporations having notice. A division of the profits on the part of the male defendants, the fruits of the fraud and conspiracy.

*After filing answers denying the material allegations of the complaint,* all of the defendants severally demurred *ore tenus* to the complaint on the ground that the complaint did not state facts sufficient to constitute a cause of action. The grounds of the demurrer are set forth *seriatim:*
(1) Plea in bar—*res judicata*—the judgment in the ejectment suit.
(2) The allegations of fraud in the procurement of the judgment are

insufficient in law; that it is not alleged that any of the persons who gave false testimony have been convicted of perjury. (3) That the causes of action are inconsistent and irreconcilable. The plaintiff seeks to follow the proceeds of the sale of land in the hands of defendants and in the same action to recover damages. The defendant, Metropolitan Life Insurance Company, assigns additional grounds: That it appears from the complaint that the alleged representations of certain of the defendants were made and done in their individual capacities and not as its agents; that the alleged representations of certain of the defendants who made the representations and did the acts complained of were without the consent or authority of said company and were done for their own benefit and purpose and not for the benefit or on behalf of said company; that in a former action between the same parties, a demurrer was sustained as to said Insurance Company, and the action dismissed and no appeal taken therefrom; thereafter plaintiff submitted to a voluntary nonsuit as to the other defendants and instituted the present action against same defendants, including the Insurance Company.

The several demurrers of the defendants were sustained and the plaintiff's action dismissed. From the judgment sustaining the demurrers, the plaintiff excepted, assigned error and appealed to the Supreme Court.

*Richmond Rucker, Ed. F. Cullom and John J. Ingle for plaintiff.*

*Manly, Hendren & Womble for Metropolitan Life Insurance Company, and Wachovia Bank and Trust Company, Receiver for the Merchants Bank and Trust Company.*

*M. W. Nash in propria persona.*

*Ratcliff, Hudson & Terrell for John H. Dyer and wife, Bertha L. Dyer.*

*Swink, Clement & Hutchins for Thomas Maslin.*

CLARKSON, J. *The first proposition.* Plea in bar—*res judicata*—the judgment in the ejectment. This cannot be sustained.

It must be borne in mind that we are not determining the truth or falsity of the facts alleged in the complaint. *The allegations of the complaint are denied by defendants in their answers. These are matters for the determination of the jury.* The defendants demur *ore tenus* to the allegations of the complaint, setting forth, as required by our procedure, the specific grounds. *Seawell v. Cole & Co.,* 194 N. C., p. 546. In such case the rule is well settled and stated in *Ballinger v. Thomas, ante,* at p. 520, as follows: "The office of a demurrer is to test the sufficiency of a pleading, admitting, for the purpose, the

truth of the allegations of fact contained therein, and ordinarily relevant inferences of fact necessarily deducible therefrom, are also admitted, but the principle does not extend to the admissions of conclusions or inferences of law. *S. v. Bank,* 194 N. C., 436; *Brick Co. v. Gentry,* 191 N. C., 636, 132 S. E., 800." *Whitehead v. Telephone Co.,* 190 N. C., p. 197.

The two deeds of trust made by plaintiff to the Merchants Bank and Trust Company, trustee for the Metropolitan Life Insurance Company, to secure two loans, are the original transactions and sources of the controversy. Then a fraudulent scheme and conspiracy is charged, growing out of the foreclosure of these deeds of trust. It extends to the ejectment suit and a link in the chain.

"Fraud is the arch enemy of equity and a court of equity will relieve against a judgment obtained by imposition or fraud." 15 R. C. L., p. 760.

Article IV, sec. 1, of Const. of N. C., in part, is as follows: "The distinctions between actions at law and suits in equity, and the forms of all such actions and suits, shall be abolished, and there shall be in this State but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which shall be denominated a civil action," etc.

"This provision does not imply that the distinctions between law and equity are abolished. Principles of law, principles and doctrines of equity, remain the same they have ever been; the change wrought is in the method of administering them and, in some degree, the extent of the application of them. *Matthews v. McPherson,* 65 N. C., 189; *Lumber Co. v. Wallace,* 93 N. C., 22. The abolition of the distinctions between actions at law and suits in equity, and the forms of all such actions and suits, does not destroy equitable rights and remedies, nor does it merge legal and equitable rights. *Rudisill v. Whitener,* 146 N. C., 403; *Boles v. Caudle,* 133 N. C., 528; *Morisey v. Swinson,* 104 N. C., 555; *Ely v. Early,* 94 N. C., 1." Connor & Cheshire, Const. of N. C. (anno.), p. 147. See, also, *Waters v. Garris,* 188 N. C., 305.

In *Houser v. Bonsal,* 149 N. C., at p. 57, it is said: "But under our present system, where courts are empowered to administer full relief in one and the same action, when all the parties to be affected by the decree are before the courts and a judgment is set up in bar and directly assailed in the proceeding for fraud, this is a direct and proper proceeding to determine its validity." *Mottu v. Davis,* 151 N. C., 237; *Trust Co. v. Bank,* 193 N. C., 528.

*The second proposition.* The allegations of fraud in the procurement of the judgment are insufficient in law that it is not alleged that any

of the persons who gave false testimony have been convicted of perjury. This cannot be sustained.

C. S., 398, is as follows: "Where the violation of a right admits both of a civil and criminal remedy, the right to prosecute the one is not merged in the other."

In an action for *malicious prosecution,* the rule is that it is necessary that the proceeding upon which it is based should have been properly terminated. *Winkler v. Blowing Rock Lines, ante,* 673.

*Kinsland v. Adams,* 172 N. C., 765, is distinguishable because in that case the complaint did not contain an allegation of fraud, as in the instant case, but only a charge of false testimony of a witness. Here the action of ejectment itself is made a constituent element, a link or circumstance in the alleged conspiracy and fraud of the parties, who are more than witnesses. The *Kinsland case* cites *Moore v. Gulley,* 144 N. C., where at p. 84 it is said: "It is not sufficient to sustain an independent action for relief against the verdict and judgment, unless there has been some *fraudulent conduct* or perjury." As seen in the *Houser case, supra,* this question can be determined in the present action. In *Stelges v. Simmons,* 170 N. C., at p. 45, "no fraud has been alleged."

*The third proposition.* That the causes of action are inconsistent and irreconcilable. The plaintiffs seek to follow the proceeds of the sale of land in the hands of defendants and in the same action recover damages. This cannot be sustained. The defendants in their brief say "in submitting this proposition the defendants do not concede that the plaintiff, Scales, has set out more than one cause of action."

The following is approved in *Taylor v. Ins. Co.,* 182 N. C., at p. 122: " 'The plaintiff may unite in the same complaint several causes of action when they arise out of the same transaction or transactions connected with the same subject of action, the purpose being to extend the right of the plaintiff to join actions, not merely by including equitable as well as legal cause of action, but to make the ground broad enough to cover all causes of action which the plaintiff may have against the defendant arising out of the same *subject* of action, so that the Court may not be forced "to take two bites at a cherry," but may dispose of the whole subject of controversy and its incidents and corollaries in one action.' *Hamlin v. Tucker,* 72 N. C., 502." *Seawell v. Cole Co., supra.*

The matter complained of by defendants can be determined upon the trial in the court below when plaintiff tenders the issues upon the theory of the cause of action which he relied on. See *Causey v. Morris, ante,* p. 532.

In *Cotten v. Laurel Park Estates, Inc., post,* 848, 141 S. E., 339, it is said at p. 340: "The defendants argue, with persuasive but not

convincing reasoning, that there is a misjoinder of causes of action and parties; that the complaint is bad for multifariousness; that the complaint contains inconsistent and contradictory causes of action. We cannot so interpret it. Taking the three causes of action, although artificially set forth, as a whole, not disconnectedly, we think under a liberal construction, 'with a view to substantial justice between the parties,' it is one connected story—a common scheme, or plot, practically a conspiracy. The complaint alleges an actionable fraud of the most nefarious kind, connecting all of the defendants and charging, with particularity, all of them with full knowledge and complicity. The cause of action arises out of the same transaction, or transaction connected with the same subject of action. All flow from the same source; all are woven together, yoked together, in a scheme, plot, or conspiracy to defraud the plaintiff. 'If the fountain is tainted, so, likewise, is the water that flows from it into all the streams,' " citing cases. See *Trust Co. v. Peirce, ante*, 717.

The demurrer of the defendant, Metropolitan Life Insurance Company, cannot be sustained. The language used and the "relevant inference of fact necessarily deducible therefrom" we think sufficient as against the demurrer.

As to any former action, it is said in *Cherry v. R. R.,* 185 N. C., p. 92-93: "A demurrer averring any fact not stated in the pleading which is attacked, commonly called a 'speaking demurrer,' is never allowable," and cases cited. *Murphy v. Greensboro,* 190 N. C., 268; *Brick Co. v. Gentry,* 191 N. C., 636; *Reel v. Boyd, ante,* 273.

From a careful review of the record and authorities, we think the demurrer should have been overruled.

Reversed.